**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TODD WARD<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL NSURANCE COMPANY,<br><br>Defendant. | ) | Case No. CIV-15-662-HE |

## COMPLAINT

COMES NOW the Plaintiff Todd Ward, by and through his counsel of record, and for his causes of action against the Defendant Liberty Mutual Insurance Company, alleges and states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is, and was at all times relevant herein, a citizen of the State of Oklahoma and a resident of Oklahoma County, Oklahoma.

2. Defendant is a company organized and existing under the laws of the State of Massachusetts with its headquarters and principal place of business in the State of Massachusetts that is licensed to and does engage in the business of insurance in Oklahoma.

3. Defendant is part of the Liberty Mutual group of companies. Defendant will, hereinafter, be referred to as "Liberty Mutual".

4. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five

thousand ($75,000.00) and there is complete diversity of citizenship between the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claim occurred in this District.

**FACTS**

6. Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-5 above.

7. On June 28, 2013, Plaintiff was traveling with his wife, Rita Ward, southbound through the intersection of South May Avenue and Southwest 84th Street in Oklahoma City, Oklahoma, when another vehicle turned directly in front of Plaintiff, forcing him to slam on his brakes and brace for immediate impact. Directly after the vehicles collided, three males exited the other vehicle and fled the scene on foot carrying a duffel bag. When the Oklahoma City Police Department arrived, they determined that the vehicle had been stolen from Chandler, Oklahoma.

8. As a result of the automobile wreck, Plaintiff sustained severe bodily injuries.

9. At the time of the accident, Plaintiff was an insured of Defendant for uninsured/underinsured ("UM/UIM") motorist coverage, Policy No. AOS-298-635696-4024, with policy limits in the amount of $250,000.00.

10. Following the wreck, Plaintiff began experiencing debilitating pain in his right knee that severely limited his mobility. Plaintiff went to his primary care

provider, OU Physicians Fountain Lake Family Medicine, and due to Dr. Bryan Pothoff's impression of "acute right knee pain", Plaintiff underwent x-rays that showed degenerative joint disease in the medial compartment of his right knee. Over the next several months, Plaintiff received conservative treatment for his right knee, including injections and physical therapy.

11. Despite the conservative treatment, Plaintiff's pain and feeling of instability continued to increase, which further limited his mobility and ability to perform daily tasks. Ultimately, Plaintiff underwent a successful right knee replacement on May 7, 2014.

12. Prior to the surgery, on December 11, 2013, counsel for Plaintiff sent correspondence to Defendant to confirm his representation of Plaintiff for the injuries sustained in the wreck, to request UM/UIM coverage limits, and to inform Defendant that all relevant medical records and bills were being obtained. (*Letter from Andy Campbell to Liberty Mutual Insurance Company*, 12/11/13, attached as Exhibit "1").

13. A few months after Plaintiff had his successful right knee replacement, on September 18, 2014, counsel for Plaintiff made a demand of $120,000.00 to settle Plaintiff's UM/UIM claim. (*Letter from Andy Campbell to Liberty Mutual Insurance Company*, 09/18/14, attached as Exhibit "2"). Along with the demand, counsel provided Defendant with a complete medical history of the treatment Plaintiff received as a result of the severe injuries he suffered in the wreck, a medical bills summary showing treatment costs of approximately $41,160.00, as well as a copy of

all supporting medical records and bills.[1] (Exhibit "2"). Counsel for Plaintiff specifically pointed out that although "Mr. Ward had degenerative joint disease in his right knee prior to the accident, there is no doubt that the crash at issue in this case exacerbated Mr. Ward's knee pain and directly led to his surgery in May 2014". (Exhibit "2").

14. The next day, on September 16, 2014, counsel for Plaintiff received correspondence from Defendant indicating Talicia Smart would be the Claims Representative assigned to Plaintiff's claim. (*Letter from Talicia Smart to Andy Campbell*, 09/16/14, attached as Exhibit "3").

15. A month later, Defendant made an offer to settle Plaintiff's UM/UIM claim for $1,212.25, allowing nothing for the treatment Plaintiff had received related to his knee.

16. Plaintiff's counsel immediately rejected Defendant's offer. (*Letter from Andy Campbell to Talicia Smart*, 10/15/14, attached as Exhibit "4"). In a letter dated October 15, 2014, Plaintiff's counsel pointed out that, while Plaintiff recalled suffering from minor pain in his right knee prior to the accident, the pain never prevented him from climbing mountains or walking long distances for his photography business. (Exhibit "4"). Further, Counsel advised that Plaintiff "never saw an orthopedist regarding his right knee and never had any shots, prescriptions, or radiology regarding his right knee". (Exhibit "4"). Finally, Counsel provided

[1] The demand package was a total of 206 pages because it included all medical records and medical bills. As a result, only the correspondence itself has been attached as Exhibit "2".

Defendant with language from Oklahoma Uniform Jury Instruction No. 4.10, which states that, "[a] person who has a condition or disability at the time of an injury is entitled to recover damages for any aggravation of such pre-existing condition or disability directly caused by the injury." (Exhibit "4").

17. Almost two months later, Ms. Smart requested that Plaintiff's counsel provide her with "any priors [sic] diagnostics as it is confirmed that your client had knee concerns prior to this accident." (*Letter from Talicia Smart to Andy Campbell*, 12/08/14, attached as Exhibit "5").

18. That same day, counsel for Plaintiff wrote to Ms. Smart regarding her request and specifically pointed out that nothing in Plaintiff's medical records indicate the need for a knee replacement prior to the car wreck. (*Letter from Andy Campbell to Talicia Smart*, 12/08/14, attached as Exhibit "6"). Counsel's letter also confirmed Defendant's agreement to accept all of Plaintiff's treatment and care related to the car wreck that occurred prior to the right knee surgery of May 7, 2014. (Exhibit "6").

19. Subsequently, on December 23, 2014, Ms. Smart sent a letter to Plaintiff's counsel indicating Defendant would "need all priors for the last five years as well as any diagnostics to independently evaluate [Plaintiff's] file." (*Letter from Talicia Smart to Andy Campbell*, 12/23/14, attached as Exhibit "7").

20. In response, on January 22, 2015, counsel for Plaintiff provided Defendant medical records from OU Physicians, Plaintiff's primary care provider,

from September 2011 through 2013.[2] (*Letter from Andy Campbell to Talicia Smart*, 01/22/15, attached as Exhibit "8"). Counsel for Plaintiff verified that the records showed Plaintiff did not intend to have right knee surgery prior to the wreck nor had he had any treatment or radiology of the right knee prior to the wreck. (Exhibit "8"). Based on the records, counsel for Plaintiff stated that Defendant could no longer continue to deny causation of Plaintiff's right knee injury and subsequent surgery and, again, reiterated a demand of $120,000.00 to resolve Plaintiff's UM/UIM claim. (Exhibit "8").

21. On January 30, 2015, Ms. Smart confirmed receipt of Plaintiff's prior records and informed counsel that she had requested a peer review of Plaintiff's prior records along with records related to the wreck. (*Letter from Talicia Smart to Andy Campbell*, 01/30/15, attached as Exhibit "9"). Ms. Smart also stated that she would reevaluate the claim "upon receipt of new information from the peer review and any additional information", but the "offer remains the same at $10,315.80, which includes treatment through 12/04/13". (Exhibit "9").

22. Subsequently, and without explanation, Ms. Smart notified counsel for Plaintiff on February 6, 2015, that she needed to independently collect prior records. (*Letter from Talicia Smart to Andy Campbell*, 02/06/15, attached as Exhibit "10").

23. On February 17, 2015, counsel for Plaintiff had a discussion with Ms. Smart regarding the peer review that had been conducted, wherein he learned that the

---

[2] The medical records from OU Physicians for September of 2011 through 2013 total 65 pages. As a result, only the correspondence itself has been attached as Exhibit "9".

peer reviewer had purportedly concluded that Plaintiff would have required surgery on his right knee regardless of the wreck and that, in reliance upon the conclusion of the peer reviewer, Defendant was refusing to extend any further offers on Plaintiff's UM/UIM claim. (*Letter from Andy Campbell to Talicia Smart*, 02/17/15, attached as Exhibit "11").

24. Ms. Smart responded to counsel's February 17, 2015 correspondence by reiterating that Defendant's offer remained at $10,315.80. (*Letter from Talicia Smart to Andy Campbell*, 02/25/15, attached as Exhibit "12").

25. Plaintiff complied with Defendant's claims investigation for this loss, including but not limited to providing Defendant and/or its agents with a medical authorization, medical provider list, and Defendant's requested claim forms. In addition, Plaintiff provided Defendant with copies of the medical bills and records relating to the treatment from the wreck as well as prior records from his primary care provider relating to his right knee. Plaintiff also provided detailed notes and explanations of his medical treatment.

**PLAINTIFF'S FIRST CAUSE OF ACTION:**
**BREACH OF THE INSURANCE CONTRACT**

26. Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-25 above.

27. At the time of the accident, Plaintiff was an insured under an insurance policy provided by Defendant, Policy No. AOS-298-635696-4024. The policy also

provided for uninsured/underinsured ("UM/UIM") motorist coverage, with policy limits in the amount of $250,000.00.

28. As a result of the bodily injuries Plaintiff suffered in the wreck at issue where the occupants fled the scene of a stolen vehicle, Plaintiff's medical bills were approximately $41,160.00.

29. Defendant did not make timely payment of UM/UIM motorist coverage benefits and made unreasonably low offers to settle Plaintiff's UM/UIM claim.

30. Therefore, Defendant has breached the contract of insurance.

31. As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff has suffered damages in an amount in excess of $75,000.00.

## PLAINTIFF'S SECOND CAUSE OF ACTION: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

32. Plaintiff hereby adopts and re-alleges each of the facts and allegations as set forth in paragraphs 1-31 above.

33. As an insurance company licensed to do business in the State of Oklahoma, Defendant is bound by Oklahoma statutory and common law to honor its contractual obligations to its insureds in good faith. As such, Defendant has and continues to have a duty to deal fairly and in good faith with Plaintiff, its insured.

34. Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant must fully and fairly consider and evaluate the facts and circumstances of Plaintiff's UM/UIM claim, including conducting a full, fair and

timely investigation into the nature and extent of Plaintiff's injuries suffered in the wreck at issue.

35. Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant pre-judged Plaintiff's claim based on a pre-existing condition and put its own interests ahead of Plaintiff by ignoring the evidence in Plaintiff's medical records in an attempt to unreasonably compensate Plaintiff to save Defendant money.

36. Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant created obstacles for Plaintiff to overcome as a means to delay and deny reasonably compensating Plaintiff for his injuries. This includes, but is not limited to, ignoring medical records and notes that confirmed that Plaintiff had no prior treatment or need for surgery on his right knee, requesting medical records prior to the wreck when it already had prior records in its possession, and requesting and relying on a peer review to validate its delay and unreasonable offers to settle Plaintiff's UM/UIM claim.

37. Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant has a claims handling system that encourages and incentivizes claims employees to minimize the amount of compensation for claims of insureds where there is an alleged pre-existing condition. Defendant encourages this type of claims handling environment through the training and supervision of its claims employees where the duty of good faith and fair dealing is disregarded in favor of the profitability of Defendant.

38. As a result of Defendant's breach of its duty to deal fairly and in good faith, Plaintiff suffered damages in excess of $75,000.00.

39. Defendant's breach of the duty of good faith and fair dealing was intentional and malicious.

40. Punitive damages should be awarded against Defendant in amount sufficient to punish Defendant and deter others.

WHEREFORE, Plaintiff Todd Ward prays for judgment against Defendant Liberty Mutual Insurance Company for an amount in excess of $75,000.00 for damages, punitive damages, interest, attorney fees and such other relief as the Court deems just and equitable.

Respectfully submitted,

/s/Harrison C. Lujan
Simone Gosnell Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
FULMER GROUP PLLC
P.O. Box 2448
Oklahoma City, OK 73101
Phone/Fax: (405) 510-0077
Email: sfulmer@fulmergrouplaw.com
hlujan@fulmergrouplaw.com
jrowe@fulmergrouplaw.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN**
**JURY TRIAL DEMANDED**